**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**STEVEN M. KILGORE,**

                       Plaintiff,

        vs.                               5:06-CV-612
                                              (NAM/GHL)
**POLICE OFFICER KAUFMAN, POLICE
OFFICER DAWN DALY, POLICE OFFICER
LANE, SCHROADER, and MARTIN JUDGE**

                       Defendants.
_____

**APPEARANCES:**                             **OF COUNSEL:**

Steven M. Kilgore
06-A-2160
Auburn Correctional Facility
Post Office Box 618
Auburn, NY 13021
*Plaintiff, Pro Se*

Rory A. Mcmahon, Esq.                       Robert P. Stamey, Esq.
Corporation Counsel for the City of Syracuse      Assistant Corporation Counsel
300 City Hall
Syracuse, New York 13202
*Attorney for Defendants*

**NORMAN A. MORDUE, Chief U.S. District Judge**

## MEMORANDUM - DECISION AND ORDER

**I.    Introduction**

       Currently pending before the Court is a motion to dismiss plaintiff's complaint brought by

defendants Police Officer Kaufman, Police Officer Dawn Daly, Police Officer Martin Judge, Police

Officer Lane, and Police Officer Schroeder[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

[1] Although Officer Schroeder is referred to as "Schroader" in the case caption and on the Court's docket, defendants' moving papers consistently refer to him as "Schroeder," and Kilgore's most recent submissions also refer to "Schroeder." For the sake of consistency, the Court will also refer to "Officer Schroeder."

Procedure. *See* Dkt. No. 30, Notice of Mot. In addition, *pro se* plaintiff, Steven M. Kilgore, has moved for summary judgment. *See* Dkt. No. 43.[2]

## II.     The Complaint and Background

On May 18, 2006, Kilgore filed his civil rights complaint pursuant to 42 U.S.C. § 1983 against defendants. *See* Dkt. No. 1, Compl. Kilgore filed an amended complaint on September 18, 2006, in which he named defendants in both their official and individual capacities, *see* Dkt. No. 9, Am. Compl., at 3, and a second amended complaint on November 27, 2006, *see* Dkt. No. 17, Second Am. Compl.[3]

As detailed by the testimony appended to the second amended complaint, Officers Kaufmann and Daly were on duty the morning of August 8, 2002, and at approximately 6:30 a.m., they responded to a residence to investigate a complaint of rape. There, Officers Kaufman and Daly met with the alleged victim whom appeared visibly distraught. She claimed that a black male had abducted her and then raped her at his apartment during the course of the night, sometime between 1:00 a.m. and 6:00 a.m. The alleged victim described her alleged assailant as muscular, noted that he had a large stomach and drank from Tropicana and Hawaiian Punch bottles, and recalled that a white sheet was draped over a window in the apartment. She described that she was on the third floor

---

[2] In his response to defendants' motion to dismiss, Kilgore requested that the Court convert the motion to a motion for summary judgment. *See* Dkt. No. 37, Dkt No. 41. Kilgore made the same request by letter motion. *See* Dkt. No. 42.

[3] In his second amended complaint, plaintiff failed to expressly state whether he sued defendants in their individual, official or dual capacities. As the Supreme Court has noted, "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)). In light of Kilgore's amended complaint specifying claims against defendants in both their individual and official capacities and the nature of the relief sought, the Court reads the second amended complaint as if expressly naming defendants in both their individual and official capacities. In reaching this determination, the Court notes the following: (1) Kilgore seeks punitive damages, which indicates the personal nature of the suit and (2) defendants raised the defense of qualified immunity which is only available to officials sued in their individual capacities.

2

of an apartment building and escaped when the alleged perpetrator fell asleep. The alleged victim agreed to accompany Officers Kaufman and Daly to attempt to locate the apartment where she was allegedly raped and led them to 1004 First North Street, Syracuse, New York. Dkt. No. 17, Second Am. Compl. at Ex. A, Kaufman Trial Tr. at 13-16, Daly Trial Tr. at 3-7.

While the alleged victim remained behind with Officer Daly, Officer Kaufman continued his investigation and spoke with a third floor resident in apartment #16 whom identified apartment #17 as housing a resident who matched the description of the perpetrator. Officer Kaufman proceeded to that unit and observed that its door was slightly ajar, open approximately 1½" to 2". Standing just outside the door, Officer Kaufman heard what he described as someone "gasping for air." *See id.* at Ex. A., Kaufman Trial Tr. at 17-18. Officer Kaufman knocked on the door and announced that he was a police officer but received no response. Officer Kaufman then pushed the door open and observed a white sheet covering a window and a large Tropicana bottle sitting on a table. *See id.* at 18-19. Officer Kaufman then entered the apartment and observed a man, later identified as Kilgore, with "labored breathing"[4] sleeping on a mattress on the floor. *Id.* at 20. Officer Kaufman further observed "several bags containing a white . . . chunky rocky type substance" and a "stem pipe" in close proximity to Kilgore. *See id.* Officer Kaufman awakened Kilgore by shaking his leg, ordered Kilgore to clothe himself, and then placed him in handcuffs. *See id.* at ¶ 4.

According to the second amended complaint, Officer Kaufman then summoned Officers Lane and Schroeder to the apartment where they kidnaped Kilgore and escorted him to the police station for questioning in a rape investigation. The second amended complaint alleges that police held

---

[4]On cross-examination, Officer Kaufman testified that once awakened, Kilgore was no longer in respiratory distress, but that he had "never heard snoring like that before." Dkt. No. 17, Second Am. Compl., Ex. A., Kaufman Trial Tr. at 20.

Kilgore at the police station for several hours without questioning him, during which time Officers Kaufman, Daly and Judge conducted a search of Kilgore's apartment and removed various items and personal property. The officers removed a controlled substance from Kilgore's apartment. *See* Dkt. No. 17, Second Am. Compl. at ¶ 4.

Subsequent to the officers' search, Kilgore was charged with possession of a controlled substance. Kilgore moved to suppress the evidence of the controlled substance taken by defendants from his apartment on the date of his arrest. Onondaga County Court Judge Joseph Fahey determined that Officer Kaufman had probable cause based upon exigent circumstances to enter Kilgore's apartment wherein Officer Kaufman observed the controlled substance in Kilgore's presence. *See* Dkt. No. 30, Mem. of Law at 6. Kilgore proceeded to trial where a jury convicted him of criminal possession of a controlled substance in the third degree, *see* N.Y. PENAL § 220.16[1], and criminal possession of a controlled substance in the fourth degree, *see* N.Y. PENAL § 220.09[1]. On September 30, 2005, by a 4-1 decision, the Appellate Division, Fourth Department, reversed the judgment of the Onondaga County Court, granted the part of Kilgore's motion seeking to suppress physical evidence seized by police, and dismissed the indictment, concluding that Officer Kaufman's "warrantless entry was not justified by exigent circumstances . . . ." *People v. Kilgore*, 21 A.D.3d 1257, 1257-58, 801 N.Y.S.2d 458 (4th Dep't 2005). The judgment of the Onondaga County Court was "reversed on the law." *Id.* at 1257.

According to the second amended complaint, on August 8, 2002, Officer Kaufman entered Kilgore's apartment without consent, probable cause or an arrest or search warrant. *See* Dkt. No. 17, Second Am. Compl. at ¶ 4. The second amended complaint sets forth five causes of action, which allege false arrest coupled with a violation of Kilgore's Fourth Amendment rights due to Officer

4

Kaufman's warrantless entry, malicious prosecution, and violations of Kilgore's Eighth Amendment rights. *See* Dkt. No. 17, Second Am. Compl. at ¶ 5. Kilgore contends that he has suffered "irreparable harm" as the result of the alleged illegal entry and initiation of criminal charges against him, *see id.* at ¶ 4, and he seeks punitive and compensatory damages for his pain and suffering as well as compensatory damages for attorney's fees expended during his criminal defense. *See id.* at ¶ 7.

**III.     Discussion**

    *A.     Legal Standard*

When considering a motion to dismiss a complaint under Rule 12(b)(6), a court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)). In addition, when deciding a Rule 12(b)(6) motion, a court must limit its consideration " 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken,' " *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999) (quoting *Allen v. West Point-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)), including "proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). " 'This standard is applied with particular strictness when the plaintiff complains of a civil rights violation.' " *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)). " '[T]he

issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Furthermore, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.' " *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

### *B.     Defendants' Motion to Dismiss*

In support of their motion to dismiss Kilgore's complaint, defendants advance four arguments: (1) that Kilgore's claims are barred by the expiration of the statute of limitations; (2) that defendants are entitled to qualified immunity; (3) that Kilgore failed to allege the malice element of his malicious prosecution claim; and (4) that Kilgore's claims are insufficient under Section 1983. The Court will address these arguments *seriatim*.

#### 1.     Statute of Limitations

Defendants contend that Kilgore's Section 1983 claims are time-barred. *See* Dkt. No. 30, Mem. of Law at 7-8. In actions brought pursuant to Section 1983, the applicable limitations period is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Accordingly, the three-year statute of limitations which applies in New York to unspecified personal injury claims governs plaintiff's claims. *See* N.Y. C.P.L.R. § 214(5); *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004).

Federal law governs the determination of the accrual date for purposes of the statute of limitations in a Section 1983 action. *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (citing

6

*Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). Generally, the statute of limitations accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action," *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted); however, in *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999), the Second Circuit explained that some actions including false arrest, are subject to a different analysis.

In determining when a *pro se* plaintiff's false arrest claim accrued so as to trigger the statute of limitations, the Second Circuit held that a court must first assess "whether a judgment in [the plaintiff's] favor on the false arrest claim would have undermined the validity of any potential conviction in the criminal proceedings against him." *Id.* at 122 (citation omitted). "If a favorable determination on the false arrest claim would in fact have undermined the validity of any potential conviction against [the plaintiff] resulting from the state criminal proceedings, then [the plaintiff's] false arrest claim would not accrue until those criminal proceedings terminated." *Id.* at 119. Thus, to determine whether Kilgore's false arrest claim accrued at the time of his arrest or not until such time as the prosecution against him on the charges relating to that arrest was dismissed, the question is whether a judgment in favor of Kilgore in his Section 1983 action challenging the arrest would necessarily imply the invalidity of any conviction or sentence that might have resulted from his prosecution. *See Covington*, 171 F.3d at 122 (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). "Stated another way, if a plaintiff's claim is grounded in an alleged Fourth Amendment violation, and the evidence obtained through the alleged violation is the *sine qua non* of the prosecution's case, then the statute of limitations begins to run on the date of dismissal of the conviction." *Stephenson v. Rosa*, 2006 WL 464081, at *1 (S.D.N.Y. Feb. 24, 2006) (citing *Covington*, 171 F.3d at 122-23); *see also Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (finding that "where the viability of the

7

plaintiff's claims depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct.")

Based upon even the limited factual record before the Court, there is nothing here to suggest that there was any evidence to prosecute Kilgore for possession of a controlled substance independent of the evidence obtained by defendants via the alleged Fourth Amendment violations. Accordingly, the date of the Fourth Department's dismissal of the indictment against Kilgore, September 30, 2005, serves as the date of accrual for his Section 1983 false arrest claim. *See Woods v. Candela*, 47 F.3d 545, 546 (2d Cir. 1995) (holding that a federal Section 1983 claim grounded in false arrest simply does not accrue so long as a recovery would impugn a criminal conviction).[5] Thus, Kilgore had until September 30, 2008, to file his false arrest claim. Kilgore filed his original complaint on May 18, 2006, well before the statute of limitations was set to have expired and dismissal on this basis is inappropriate.

As to Kilgore's malicious prosecution claim, the statute of limitations "starts to run only when the underlying criminal action is conclusively terminated," *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995), *i.e.*, when the charges are dismissed, *see Thompson v. City of Mount Vernon*, 1994 WL 561253, at *1 (S.D.N.Y. Oct. 12, 1994) ("The cause of action for malicious prosecution accrues at the time the charges are dismissed."). Thus, the date of the Fourth Department's dismissal of the indictment against Kilgore, September 30, 2005, serves as the accrual date for his Section 1983

---

[5]In *Woods*, the Second Circuit confronted a similar set of circumstances: a New York State Court decision had reversed the plaintiff's conviction and dismissed the indictment after ruling that the plaintiff's suppression motion should have been granted due to the defendant's lack of a reasonable suspicion on which to detain and question the plaintiff and thereafter search his vehicle. Relying upon the Supreme Court's reasoning in *Heck*, the Second Circuit held that the plaintiff's Section 1983 claim based on false arrest did not accrue prior to the reversal of his conviction. *Woods*, 47 F.3d at 546.

8

malicious prosecution claim. Kilgore filed his original complaint on May 18, 2006, well within the statute of limitations, and dismissal on this basis is inappropriate.

### 2. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. *See* Dkt. No. 30, Mem. of Law at 9. The Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). In assessing their qualified immunity defense, the Court must consider the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal citations and quotation marks omitted). Qualified immunity is a forgiving doctrine which protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Under federal law, a police officer is entitled to qualified immunity where "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)), and citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The Court must assess whether Officer Kaufman's probable cause determination, based upon the totality of the

9

circumstances, *see United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990), was objectively reasonable.

The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980). "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002). "[T]he essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action." *United States v. MacDonald*, 916 F.2d 766, 770 (2d Cir. 1990) (en banc). In determining whether such an urgent need exists, courts in the Second Circuit examine six factors as guideposts[6]:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*Loria v. Gorman*, 306 F.3d 1271, 1284 (2d Cir. 2002) (citations omitted). The Court must examine "the totality of the circumstances confronting law enforcement agents in the particular case." *MacDonald*, 916 F.2d at 770 (citing *United States v. Schaper*, 903 F.2d 891, 894 (2d Cir. 1990)). A government official is entitled to qualified immunity only "if reasonable officers could disagree as to whether exigent circumstances were present." *Loria*, 306 F.3d at 1287 (citing *Koch v. Town of Brattleboro*, 287 F.3d 162, 169 (2d Cir. 2002) (holding that a grant of summary judgment based on

---

[6]These factors represent an illustrative sampling but not an exhaustive canon. *See MacDonald*, 916 F.2d at 770.

qualified immunity "was appropriate because the officers reasonably believed that exigent circumstances justified their entry")).

Defendants argue that Officer Kaufman's belief that there were exigent circumstances sufficient to necessitate a warrantless entry was reasonable. *See* Dkt. No. 30, Stamey Decl. at ¶ 12. As noted above, prior to his warrantless entry of Kilgore's apartment, Officer Kaufman knew that the alleged victim: appeared visibly distraught; formally complained of a violent offense, *i.e.*, rape, which allegedly occurred between 1:00 a.m. and 6:00 a.m., no more than seven hours earlier; had escaped when the alleged perpetrator fell asleep; and had brought Officer Daly and him to an apartment and identified its third floor as the scene of the rape. Based upon the alleged victim's description of the alleged perpetrator, Officer Kaufman knew that the alleged perpetrator: was a muscular black male with a large stomach; drank from Tropicana and Hawaiian Punch bottles; and lived in an apartment with a white sheet draped over a window. Officer Kaufman had all of this information at his disposal when he spoke with a third floor resident of the apartment building. The resident identified a specific apartment where a fellow resident lived who matched the description of the suspect. Officer Kaufman proceeded to that apartment and observed that its door was slightly ajar. Standing just outside the door, Officer Kaufman heard what he described as someone gasping for air. Officer Kaufman knocked on the door several times and announced that he was a police officer but received no response. Officer Kaufman then pushed the door open and observed a white sheet covering a window and a large Tropicana bottle sitting on a table.

"The first factor–the gravity or violent nature of the offense–weighs heavily in the determination of whether exigent circumstances exist," *Loria*, 306 F.3d at 1285 (citing *Welsh v. Wisconsin*, 466 U.S. 740, 752 (1984), and here supports a finding of exigent circumstances: Officer

11

Kaufman was confronted by the violent offense of rape. The second factor counsels against a finding of exigent circumstances as there is no indication that weapons were present at the scene of the arrest. The third and fourth factors support a finding of exigent circumstances: Officer Kaufman reasonably believed based upon his investigation that the rape was committed by a perpetrator residing in the apartment he was about to enter. The fifth factor counsels against a finding of exigent circumstances: there is no evidence that Officer Kaufman reasonably believed that the perpetrator would escape absent immediate action. The sixth factor also supports a finding of exigent circumstances: the perpetrator failed to respond to Officer Kaufman's attempt at peaceful entry, *i.e.*, repeated knocks on the door and yelling, "police," despite the fact that the door was ajar, which allowed Officer Kaufman to enter without exaggerated physical force. *See United States v. Gordils*, 982 F.2d 64, 69-70 (1992) (explaining that "[o]nly when [the agents] received no response and heard shuffling noises inside . . . did they break down the door) (citing *MacDonald*, 916 F.2d at 770); *Loria*, 306 F.3d at 1285 (citing *United States v. Harris*, 435 F.2d 74, 82 n. 13 (D.C. Cir. 1970) (noting that "the entry here was 'peaceful' in the sense that no physical force was used, and as such would tend to support police entry without warrant in exigent circumstances.")). Moreover, Officer Kaufman heard what he believed to be someone in respiratory distress, who may have required aid. The Court concludes that based upon the totality of the circumstances, exigent circumstances justified Officer Kaufman's warrantless entry into Kilgore's apartment.

Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Even in the absence of probable cause

an arresting officer will be entitled to qualified immunity from a suit for damages if he can show that there was "arguable probable cause." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' " *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)); *see also Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (stating that "in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.") (citations omitted). As the Supreme Court explained in *Saucier*,

> officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.

533 U.S. at 206. "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause." *Escalera*, 361 F.3d at 743. Based upon the finding of exigent circumstances, the Court further concludes that based upon the drug paraphernalia Officer Kaufman observed in close proximity to Kilgore, he had probable cause to arrest him, and the Court finds that Officer Kaufman is entitled to qualified immunity.

Defendants also contend that Officers Daly, Lane, Judge and Schroeder were justified in entering the apartment to gather evidence and to secure Kilgore for transport to the Public Safety Building. *See* Dkt. No. 30, Mem. of Law at 9. Officer Kaufman summoned Officers Lane and Schroeder to the scene, and they transported Kilgore to the Public Safety Building. Officers Judge and Daly entered Kilgore's apartment, photographed it, and then gathered evidence from the scene,

allegedly removing various items of personal property in the process. *See* Dkt. No. 17, Second Am. Compl. at ¶ 4. Having found that Officer Kaufman is entitled to qualified immunity, the Court finds that Officers Lane, Schroeder, Judge and Daly are similarly entitled: there is no evidence that they deviated from reasonable protocol in the execution of their duties subsequent to Kilgore's arrest.

"[I]n a malicious prosecution action, the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced." *Mejia v. City of New York*, 119 F.Supp.2d 232, 254 (E.D.N.Y. 2000). "[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (*e.g.*, the time of the arraignment), not the time of the preceding warrantless arrest." *Id.* Here, the record reveals that no intervening fact emerged between Kilgore's arrest and prosecution so as to disturb the probable cause that existed at the arrest stage prior to the commencement of the prosecution; thus the Court's qualified immunity analysis applies with equal force to Kilgore's malicious prosecution claim. *See Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003).

Defendants are entitled to qualified immunity against Kilgore's claims and dismissal of the second amended complaint is appropriate on this basis.

   3.  Absence of Malice

Defendants argue that Kilgore failed to allege that Officer Kaufman acted with malice. *See* Dkt. No. 30, Mem. of Law at 9-10. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted); *see also Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (explaining that Section 1983 malicious prosecution claim is "virtually identical"

14

to the tort under New York law). To make out a claim for malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). The Second Circuit defines malice for purposes of a malicious prosecution claim as "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975 (1978)). Defendants assert that plaintiff has failed to allege that Officer Kaufman or defendants acted with malice.

An examination of the second amended complaint reveals that Kilgore failed to allege that defendants acted with malice; thus, the second amended complaint fails to set forth an essential element of malicious prosecution. Moreover, malice is closely related to the lack of probable cause requirement. *See Babi-Ali v. City of New York*, 979 F.Supp. 268, 277 (S.D.N.Y. 1997) (citing *Post v. Elser*, 1996 WL 406843, at *8 (N.D.N.Y. July 19, 1996)). "In most cases, the lack of probable cause–while not dispositive–'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.' " *Lowth*, 82 F.3d at 573 (quoting *Conkey v. State*, 74 A.D.2d 998, 427 N.Y.S.2d 330, 332 (4th Dep't. 1980)). Here, the Court has determined that Officer Kaufman had probable cause and that defendants are entitled to qualified immunity. Dismissal of Kilgore's malicious prosecution claim is appropriate on this basis.

    4.  Failure to Sufficiently Plead Section 1983 Cause of Action

Defendants argue that Kilgore's second amended complaint fails to sufficiently plead Section 1983 causes of action against them. Defendants note that to establish a constitutional violation under

15

Section 1983, Kilgore must demonstrate that defendants were acting under the color of state law at the time of their alleged actions, which deprived him of a constitutional or federal statutory right. Defendants argue that the second amended complaint contains no allegation that Kilgore "was subject[ed] to an unlawful entry of his apartment, seizure of his property, was falsely arrested, detained or maliciously prosecuted due to a custom, practice or policy " Dkt. No. 30, Mem. of Law at 10. In his response, Kilgore argues that "defendants [sic] employer should be held accountable for failing to properly train the defendants on the Rules of search and seizure." Dkt. No. 37, at ¶ 59. In their reply, defendants argue that Kilgore cannot assert a cause of action against the City of Syracuse at this juncture. *See* Dkt. No. 38, Reply at 7.

"In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Although Kilgore's second amended complaint does not expressly state that defendants were acting under color of state law when the alleged violations occurred, under the liberal standard afforded *pro se* litigants, the Court finds that Kilgore's allegations, which consistently characterize defendants as police officers, fairly suggest that defendants' alleged actions occurred during the course of the performance of their official duties and as such, under the color of state law. Moreover, the second amended complaint alleges that defendants' conduct deprived Kilgore of his rights. Therefore, dismissal based upon Kilgore's alleged failure to sufficiently plead the Section 1983 cause of action is inappropriate.

The parties' above cited exchange suggests that Kilgore has continued, albeit tacitly, to pursue a municipal liability claim against defendants' employer, the City of Syracuse, New York and/or its Police Department pursuant to *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny. Kilgore named the City of Syracuse as a defendant in his original and amended complaints. However, in construing Kilgore's amended complaint, the Court dismissed the City of Syracuse as a defendant because Kilgore failed to include any allegations of wrongdoing against it. The Court advised that if Kilgore intended to include the City of Syracuse as a defendant in this action,

> he must submit a second amended complaint **within thirty (30)** days from the date of the filing of this Order. In the event plaintiff seeks to file an amended complaint, he must file a complete pleading setting forth all information and defendants he wishes to include in this action. Plaintiff is advised that all individuals he seeks to name as defendants must be named in the caption of the complaint, and the full name and current address of each must be included in the listing of parties in the beginning of the complaint. Moreover, plaintiff must include specific allegations of wrongdoing by each defendant in the body of his complaint. Plaintiff is reminded that an amended complaint replaces in its entirety any previous complaint filed.

*See* Dkt. No. 12, Order at 2-3. In light of the Court's previous Decision and Order and Kilgore's failure to name the City of Syracuse as a defendant in his second amended complaint, Kilgore's argument seems rather misplaced.[7] Kilgore has already twice amended his complaint. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, where a party has already amended its pleading once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

---

[7]It does not appear that Kilgore misunderstood the Court's previous Decision and Order. In its previous Order, the Court also dismissed Officer Kaufman for the same reasons cited in support of its dismissal of the City of Syracuse, and the Court similarly advised Kilgore with respect to Officer Kaufman's inclusion in a second amended complaint. *See* Dkt. No. 12, Order at 2-3. However, while Kilgore made an effort to comply with the Court's instructions with respect to Officer Kaufman, he made no comparable effort with respect to the City of Syracuse.

17

FED.R.CIV.P. 15(a)(2). However, since the Court's previous Decision and Order, Kilgore has not moved for leave to amend his pleading, and there is no municipal liability claim against defendants' employer pending in this action.

**IV.  Conclusion**

WHEREFORE, after careful consideration of the file in this matter including the parties' submissions and the applicable law, it is hereby

ORDERED that defendants' motion to dismiss Kilgore's second amended complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 30) is GRANTED; and it is further,

ORDERED that this action is DISMISSED in its entirety; and it is further

ORDERED that the Clerk of the Court enter judgment dismissing this action; and it is further

ORDERED that Kilgore's cross motion for summary judgment (Dkt. No. 37, 41 and 42) and his motion for summary judgment (Dkt. No. 43) are DENIED as moot, and it is further

ORDERED, that the Clerk of the Court serve a copy of this Memorandum - Decision and Order on plaintiff.

IT IS SO ORDERED.

Dated:  September 25, 2008
        Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge